UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | | |
|---|---|---|
| CAPITOL SPECIALTY INSURANCE CORPORATION, | ) ) ) | CASE NO. C11-41Z |
| Plaintiffs | ) ) | |
| v. | ) ) ) | ORDER |
| YUAN ZHANG, an individual, | ) ) | |
| Defendants | ) ) | |
| _____ | ) | |

THIS MATTER comes before the Court on the plaintiff Capitol Specialty Insurance Corporation's (Capitol) motion for summary judgment, docket no. 23. By Minute Order dated March 23, 2012, docket no. 70, the Court granted in part, denied in part, and deferred in part Capitol's motion. This Order explains the Court's reasoning for the portions of the motion that were previously granted or denied.

ORDER -1

**Background**

This case arises out of repairs Hawk Construction, LLC (Hawk) and Ready Construction, LLC (Ready) made to the Lake City Apartments' (the Apartments) exterior. The defendant, Ms. Yuan Zhang, sued Hawk and Ready in state court, alleging that Hawk and Ready's work was defective and caused property damage. Zhang later settled with Hawk and Ready. Hawk and Ready confessed to judgment and assigned Zhang their insurance coverage claims against Capitol. In exchange, Zhang covenanted not to execute the judgments against Hawk and Ready. Capitol then sued Zhang in this Court, seeking declaratory relief regarding, in part, Capitol's rights and obligations under Hawk and Ready's insurance policies (the applicable policies).

**Discussion**

**A.     Standard of Review**

The Court shall grant summary judgment if no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). In support of a motion for summary judgment, the moving party need not negate the opponent's claim, *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986); rather, the moving party will be entitled to judgment if the evidence is not sufficient for a jury to return a verdict in favor of the opponent, *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). When the record, taken as a whole, could not lead a rational trier of fact to find for the non-moving party, summary judgment is warranted. *See Beard v. Banks*, 548 U.S. 521, 529 (2006).

**B.    Coverage Issues and Exclusions under the Applicable Policies**

Under the Declaratory Judgment Act, a district court may "declare the rights and other legal relations of any interested party seeking such declaration." 28 U.S.C. § 2201(a). Capitol seeks such relief and moves, in part, for summary judgment declaring that, under the applicable policies, (1) the Exterior Insulation and Finish System (EIFS) Exclusion bars coverage; (2) the Contracted Persons Exclusion bars coverage; (3) the Fungi or Bacteria Exclusion bars coverage; (4) Hawk and Ready's breach of the policies' notice condition bars coverage; (5) pre-policy knowledge of the damages bars coverage; and (6) Capitol is obligated to pay only that portion of the underlying judgments, if any, that are attributable to covered property damage.

    **1.    Facts Pertaining to Hawk and Ready's Work**

In October of 2007, Lake City Way Place Condominium LLC, of which Zhang is the sole and managing member, purchased the Apartments. Declaration of Yuan Zhang, docket no. 32, at ¶ 1; Amended Declaration of Yuan Zhang, docket no. 48, at ¶ 1, Ex. 1. After her purchase, Zhang hired Jeff Samdal to evaluate the Apartments' condition. Zhang Decl. at ¶ 1. Samdal inspected the building and did not observe any damage underneath the siding, but did not remove any siding to inspect underlying wall components. Amended Declaration of Todd Skogland, docket no. 36, at ¶ 1, Ex. A ("Samdal Report") (Declaration of Jeff Samdal at ¶ 1-4, Ex. 1). Samdal then produced a report that identified damage to the decks and noted the possibility that there could be damage underneath the siding.[1] Declaration of Brian Hickman, docket no. 25, at Ex. 1. The

---

[1] The inspection, and resulting report, identified the following needed repairs and damage:

Samdal Report also acknowledged that the Apartments were partially clad in EIFS, a type of building exterior wall cladding system, *id.* at 20, which covered less than five percent (or less than 1,000 sq. ft.) of the exterior, Declaration of Martin Flores, docket no. 33, at ¶ 11.  This EIFS was installed before Zhang's purchase.  Zhang Decl. at ¶ 13.  Zhang reviewed the Samdal Report before seeking repairs to the Apartments.  Hickman Decl. at Ex. 1, pp. 3-4 (Admission nos. 5 & 6).  Additionally, Zhang did not have knowledge of any damage behind the siding before seeking repairs.  Zhang Decl. at ¶ 1.

On October 15, 2007, Zhang contracted with Hawk to make siding and deck repairs and to repair damages referenced in the above report.  Zhang Decl. at ¶ 2; Hickman Decl. at Ex. 1, p. 4 (Admission no. 7).  The contract required Hawk to remove and replace vinyl siding and repair any damage it discovered underneath the siding.  Zhang Decl. at Ex. A.  The contract also required Hawk to remove and replace damaged decking materials.  *Id.*  The contract did not explicitly include any repairs to EIFS.  *See* Zhang Decl. at Ex. A.  Before beginning, Hawk did not know whether there was any damage underneath the siding.  Am. Skoglund Decl. at Ex. B, ¶ 4 (Declaration of Kwang Park).  On October 25, 2007, Hawk subcontracted work to Ready.  Zhang

---

- "The building is in need of major renovation of the balconies among other repairs.  There was a considerable amount of rot and/or moisture staining in these areas."  Hickman Decl. at Ex. 1, p. 20.
- "There clearly will be a lot of rot that we cannot see . . . ."  *Id.*
- "Remove and replace . . . rot in window and door sills and . . . further investigate these areas for [rot]."  *Id.* at 21.
- "Further investigate extent of rot damage in the wood framed balconies, wood railings, and all adjacent areas in the building itself to see the full extent of the damage."  *Id.*
- "There were several window sills and door thresholds that had rot and/or soft spots in their vicinity. All rot damaged wood in these areas should be replaced and the area should be further investigated . . . ."  *Id.* at 30.
- "The balconies and wood railings . . . are generally in very poor condition with a vast amount of wood rot and moisture staining visible."  *Id.* at 31.

Decl. at Ex. B. This subcontract required Ready to replace portions of the siding on the Apartments and repair and waterproof the decks. *Id.*

When Hawk started work on the Apartments, it replaced the vinyl siding with fiber cement siding, but did not look behind the other exterior layers.[2] Am. Skoglund Decl. at Ex. B (Park Decl. at ¶ 3). Hawk installed the new siding directly over the Styrofoam below the original siding. Zhang Decl. at ¶ 6. During the course of its work, Hawk was not told about, nor did Hawk see or test for, any damage underneath the siding and the materials underneath. Am. Skoglund Decl. at Ex. B (Park Decl. at ¶¶ 3 & 4). Hawk's work, while lasting several months, was not continuous. *Id.* (Park Decl. at ¶ 6). Indeed, Hawk stopped work on many occasions because of heavy rain. *Id.* During these stoppages, the Apartments' exterior was exposed to heavy and continuous rain for weeks at a time. Zhang Decl. at ¶ 4. Zhang's tenants told her that water was entering and causing damage to their units. *Id.* Zhang informed Hawk of the damage "early in 2008." Am. Skoglund Decl. at Ex. B (Park Decl. at ¶ 5).

The siding Hawk installed later started falling off, and Zhang noticed signs of water damage to the units. Zhang Decl. at ¶¶ 6 & 7. Hawk agreed to install new siding and repair any water damage it caused. Am. Skoglund Decl. at Ex. B (Park Decl. at ¶ 7). After Hawk removed the siding it previously installed, as well as the Styrofoam layer underneath, Zhang and Hawk noticed water damage. Zhang Decl. at ¶ 8. Hawk and Ready later ceased work on the Apartments,

---

[2] On December 5, 2007, Hawk applied for, and received, a general liability policy from Capitol. Declaration of David Schirmer, docket no. 24, at ¶¶ 4 & 6, Ex. 1; Hickman Decl. at Ex. 3, p. 1. On December 11, 2007, Ready applied for, and received, a commercial general liability policy from Capitol. Schirmer Decl. at ¶¶ 5 & 6, Ex. 2; Hickman Decl. at Ex. 4, p. 1.

ORDER -5

leaving their work unfinished.   Hickman Decl. at Ex. 9, p. 3 (Deposition of Kwang Park, pp. 30-32).

### 2.   **Insurance Policy Interpretation**

In Washington, interpretation of an insurance contract is a question of law. *Diamaco, Inc. v. Aetna Cas. & Sur. Co.*, 97 Wn. App. 335, 337-38 (1999).   Courts construe the terms of an insurance policy in a "fair, reasonable, and sensible" manner, *Overton v. Consol. Ins. Co.*, 145 Wn.2d 417, 424 (2002); and interpret policies "as an average insurance purchaser would understand them," giving undefined terms their "plain, ordinary, and popular meanings," *Diamaco*, 97 Wn. App. at 338.   Courts also give policies a practical and reasonable interpretation, not one that leads to absurd results.   *Morgan v. Prudential Ins. Co. of Am.*, 86 Wn.2d 432, 434-35 (1976). Moreover, courts strictly construe policy ambiguities, especially those in exclusions, against the insurer.   *Hayden v. Mut. of Enumclaw Ins. Co.*, 141 Wn.2d 55, 64 (2000).   An ambiguity exists "if the *language on its face* is fairly susceptible to two different but reasonable interpretations."   *Kish v. Ins. Co. of N. Am.*, 125 Wn.2d 164, 171 (1994) (emphasis in original).   Courts strictly and narrowly construe exclusions to provide maximum coverage.   *McDonald Indus., Inc. v. Rollins Leasing Corp.*, 95 Wn.2d 909, 914-15 (1981).

### 3.   **The Exterior Insulation and Finish System (EIFS) Exclusion**

The applicable policies contain an EIFS Exclusion that states that the policies do not apply to property damage arising out of any "EIFS work . . . performed by any insured or on behalf of any insured."   Hickman Decl. at Exs. 3 & 4, p. 59.   The policies define "EIFS work," in pertinent part,

as "[a]ny . . . construction, . . . installation, application, . . . or repair, including . . . replacement . . . of any exterior component, fixture or feature of any structure if any 'EIFS' work, . . . is used on any part of that structure." *Id.* Capitol argues that this exclusion bars coverage for damages arising out of *any* work on the Apartments' exterior if *any* portion of the building is clad in EIFS. Zhang argues that the exclusion only bars coverage for damages arising out of the insured's work with EIFS, or for damages associated with, or caused by, EIFS.

The EIFS exclusion is clear and unambiguous. The applicable policies only bar coverage for damages arising out of any EIFS work performed by any insured or on behalf of any insured. Capitol's argument that the language of the exclusion bars coverage for property damages arising out of an insured's exterior work if *any prior individual* used or installed the EIFS present on the structure, no matter how small that EIFS area is, and no matter how unrelated that EIFS was to the insured's work and the resulting damage, is unreasonable as a matter of law.[3]

Capitol presents no evidence, nor does it argue, that Hawk or Ready installed EIFS on, or in any way worked on the EIFS already on, the Apartments. On this record, it is undisputed that the EIFS was installed before Zhang purchased the Apartments, *see* Zhang Decl. at ¶ 13; that Hawk's contract with Zhang did not specify repairs to any EIFS, Zhang Decl. at Ex. A; that the scope of repairs needed to repair and correct Hawk and Ready's work did not contain repairs to the EIFS or

---

[3] The Court concludes that the breadth of the exclusion argued by Capitol is not reasonable. *See Morgan*, 86 Wn.2d at 434-35 (courts give policies practical and reasonable interpretation, not one leading to absurd results); *Overton*, 145 Wn.2d at 424 (courts construe terms in "fair, reasonable, and sensible" manner). Capitol argues that the exclusion is broad because EIFS is notoriously defective. Although Capitol wanted to insulate itself from a defective product, it could have unambiguously delineated when and how the exclusion applied. *See Cook v. Evanson*, 83 Wn. App. 149, 153 (1996) ("An insurer may limit its liability so long as it does so with clear language.") (citation omitted).

any damage associated with the EIFS, Flores Decl. at ¶¶ 9-10 & Ex. B; and that Zhang is not requesting any damages associated with the EIFS, Zhang Decl. at ¶ 12. Accordingly, the Court denies Capitol's motion for partial summary judgment based on the EIFS exclusion.[4]

### 4. The Contracted Persons Exclusion

The applicable policies state, in pertinent part, that the policies do not apply to property damage "sustained by any person" who is

1. Contracted with you or with any insured for services; or
2. . . . contracted with any entity that is:
   A. Contracted with you or with any insured for services; or
   B. Contracted with others on your behalf for services.

Hickman Decl. at Exs. 3 & 4, p. 59. In advancing their arguments regarding the interpretation of this exclusion, the parties rely on the exclusion's plain language and do not cite case law requiring or suggesting one particular interpretation over another. Capitol first argues that, with respect to Hawk, the exclusion applies because Zhang, the person who sustained property damages, contracted with Hawk for construction services. In essence, Capitol argues that the exclusion bars coverage for property damage sustained by *any* person who had a contract with Hawk. Zhang responds that this is unreasonable and argues for a narrow interpretation.[5]

---

[4] Capitol cites two cases, one a Court of Appeals of Texas case and the other a Fifth Circuit case, as persuasive authority that the EIFS exclusion in this case should apply to bar coverage. *See Trinity Universal Ins. Co. v. Emp'rs Mut. Cas. Co.*, 592 F.3d 687 (5th Cir. 2010); *Pine Oak Builders, Inc. v. Great Am. Lloyds Ins. Co.*, 292 S.W.3d 48 (Tex. App. 2006), *aff'd in part, rev'd in part on other grounds*, 279 S.W.3d 650 (Tex. 2009). These cases are unpersuasive in the circumstances of this case because both cases only focused on the duty to defend based on the pleadings. *See Trinity Universal*, 592 F.3d at 691-93; *Pine Oak Builders*, 292 S.W.3d at 53, 63. Neither court analyzed the scope of the applicable EIFS exclusion.

[5] Zhang also argues that the property damages were sustained by Lake City Way Place Condominiums, LLC, which is not a "person" under the exclusion. The exclusion, and the applicable policies in general, do not define person.

Under Washington law, "if the policy language is clear and unambiguous, [courts] must enforce [the policy] as written; [courts] may not modify it or create ambiguity where none exists." *Quadrant Corp. v. Am. States Ins. Co.*, 154 Wn.2d 165, 171 (2005). In this case, the plain language of the exclusion is unambiguous. The exclusion bars coverage for property damages "sustained by any person who is . . . [c]ontracted with [the insured] for services." A 'person who is contracted with the insured for services' is the party to the insured's contract that performs the services for the insured (i.e., the insured's subcontractors). Thus, the exclusion bars coverage for property damages sustained by an insured's subcontractors (and the subcontractor's subcontractors).[6] Here, Zhang is not a subcontractor for Hawk or Ready. Accordingly, the exclusion does not bar coverage for the property damages sustained by Zhang.

### 5. The Fungi or Bacteria Exclusion

The applicable policies contain a Fungi or Bacteria Exclusion that states, in pertinent part, that the policies do not cover

> 1. . . . "property damage" which would not have occurred, in whole or in part, but for the . . . threatened . . . existence of, or presence of, any "fungi" or bacteria on or within

---

*See* Hickman Decl. at Exs. 3 & 4, pp. 33-36 (definitions), 59 (exclusion). Generally, definitions provided in a policy are controlling. *Overton*, 145 Wn.2d at 427. But if a term is undefined, it is given the plain and ordinary meaning found in a standard English dictionary. *Id.* at 428. Merriam-Webster defines person as both a human individual and as "one (as a human being, a partnership, or a corporation) that is recognized by law as the subject of rights and duties." MERRIAM-WEBSTER ONLINE DICTIONARY, http://www.merriam-webster.com/dictionary/person (last visited April 9, 2012). Accordingly, Lake City Way Place Condominiums, LLC is a person under the policy.

[6] The Court also finds that the breadth of the interpretation argued by Capitol, i.e. that the exclusion bars coverage because Zhang had a contract with Hawk, is not reasonable. Such an interpretation leads to an absurd result: the policy often would not provide coverage because the insured (contractor) typically contracts with the person (owner) that suffered the damage. *See Morgan*, 86 Wn.2d at 434-35 (courts also give policies a practical and reasonable interpretation, not one that leads to absurd results). A more reasonable and sensible interpretation of this exclusion is that it bars coverage for property damage sustained by the insured's subcontractors (and that subcontractor's subcontractors). *See Overton*, 145 Wn.2d at 424 (courts construe terms in "fair, reasonable, and sensible" manner).

ORDER -9

> a building or structure . . . regardless of whether any other cause [or] event. . . contributed concurrently or in any sequence to [such damage]. . . .
>
> "Fungi" means any type or form of fungus, including mold or mildew and any mycotoxins, spores, scents or byproducts produced or released by fungi.

Hickman Decl. at Exs. 3 & 4, p. 54. Capitol argues that the exclusion bars coverage because Zhang's property damages indisputably arise from, and are attributable at least in part to, the actual and/or threatened presence of fungus or bacteria. Capitol relies on (1) Zhang's pre-purchase inspection report, which referenced "wood rot" and "rot" damage; (2) Zhang's expert's description of mold and black organic growth in the Apartments; (3) Hawk's admission that errors in Ready's work led to mildew[7]; and (4) Zhang's repair plans, which called for exterior fungicide application to prevent fungal growth from recurring.

The Court denies Capitol's motion because genuine issues of material fact preclude the Court from determining the exclusion's applicability. These include, without limitation, (1) whether there was any existing or threatened presence of fungus or bacteria; (2) whether any possible rot identified in the Samdal Report was actually caused by fungus or bacteria; (3) whether Zhang's trial expert Martin Flores' observation of mold and black organic growth constituted an existing or threatened presence of a fungus or bacteria; and (4) whether Zhang's alleged damages occurred, in whole or in part, because of the existing or threatened presence of fungus or bacteria.

---

[7] Capitol cites a state court summary judgment motion to support this assertion, but nothing else in the record supports the assertion. Nonetheless, the Court considered the assertion because the assertion does not eliminate the genuine issues of material fact that preclude the Court from determining the exclusion's application.

ORDER -10

### 6. **The Applicable Policies' Notice Condition**

The applicable policies contain notice conditions that state, in pertinent part, as follows:

a. [The insured] must see to it that [Capitol is] notified as soon as practicable of an "occurrence" or an offense which may result in a claim. . . .

b. If a claim is made or "suit" is brought against any insured, [the insured] must: . . . (2) Notify [Capitol] as soon as practicable. You must see to it that [Capitol] receives written notice of the claim or "suit" as soon as practicable.

Hickman Decl. at Exs. 3 & 4, p. 31. The policies define "occurrence" to mean "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." *Id.* at 35. As a threshold matter, nothing in the record establishes that Hawk or Ready notified Capitol of Zhang's property damage or state lawsuit.[8] The only evidence in the record regarding Capitol's notice shows that Zhang's counsel first provided Capitol with notice of the state court lawsuit. *See* Schirmer Decl. at ¶ 7, Ex. 3. Capitol received this notice almost one year after Hawk and Ready performed the allegedly defective work. *See id.*

In Washington, however, whether an insured breached a notice provision "is generally a question for the trier of fact, unless . . . there exists no genuine issue as to any material fact." *Or. Auto. Ins. Co. v. Salzberg*, 85 Wn.2d 372, 377 (1975). An insured's breach of a notice condition relieves the insurer of its coverage duty only if it can prove that the breach "caused actual and substantial prejudice." *Schwindt v. Commonwealth Ins. Co.*, 140 Wn.2d 348, 357 (2000). The insurer has the affirmative burden of proving the substantial and actual prejudice. *Felice v. St.*

---

[8] Zhang argues that Hawk and Ready notified Capitol as soon as Hawk and Ready understood a claim would be made against them. Nothing in the record supports this assertion, however.

ORDER -11

*Paul Fire & Marine Ins. Co.*, 42 Wn. App. 352, 359 (1985). Relevant factors include (1) "when the insured discovered its loss"; (2) "whether the delay . . . left the insurer without an opportunity to . . . defend the insured in an underlying action brought by a third party"; (3) "whether the insured destroyed evidence relevant to a policy exclusion"; and (4) "whether the insured failed to control remediation costs." *Schwindt*, 140 Wn.2d at 360 n. 7 (citations omitted).

Capitol argues that it was prejudiced by Hawk and Ready's failure to notify Capitol because, had it received timely notice, Capitol would have cancelled the policies, reduced its coverage exposure, and strengthened its coverage defenses. Capitol relies on *Key Tronic Corp. v. St. Paul Fire & Marine Ins. Co.*, 134 Wn. App. 303, 307 (2006), for the proposition that Capitol need only demonstrate "some concrete detriment" resulting from Hawk and Ready's delay which "harms [Capitol's] preparation or presentation of defenses to coverage or liability." While Capitol correctly quotes *Key Tronic*, that court later concluded that the prejudice inquiry is "whether the insured's failure to notify prevented the insurer from conducting a meaningful investigation or presenting a viable defense. This is a question of fact, if the facts are disputed." *Id.*

On this record there are genuine issues of material fact as to whether Hawk and Ready's breach of the notice condition "caused actual and substantial prejudice." *See Schwindt*, 140 Wn.2d at 357. Under Washington law, actual and substantial prejudice is limited to the insurer's ability or inability to defend the insured in the underlying action. *See id.*; *Unigard Ins. Co. v. Leven*, 97 Wn. App. 417, 427 (1999) (must demonstrate "some concrete detriment, some specific advantage lost or disadvantage created, which has an identifiable prejudicial effect on the insurer's

ability to evaluate, prepare or present its defenses to coverage or liability"); *Sears, Roebuck & Co. v. Hartford Acc. & Indem. Co.*, 50 Wn.2d 443, 454 (1957) (insurer deprived of right to have case investigated, prepared, and presented by counsel of its choosing); *Felice*, 42 Wn. App. at 360 (timing of notice precluded insurer from evaluating facts and determining whether trial warranted). There are also material issues of fact as to whether and how (1) Hawk and Ready's failure to notify Capitol deprived Capitol of an opportunity to defend Hawk and Ready, (2) the delay prevented Capitol from conducting a meaningful investigation or from presenting viable defenses, and (3) Capitol's inability to cancel the policies and strengthen its coverage defenses affected Capitol's ability to evaluate, prepare, or present its defenses.

### 7. Pre-policy Knowledge of Damages

The applicable policies provide, in pertinent part, as follows:

> b. This insurance applies to . . . "property damage" only if: . . . (3) Prior to the policy period, no one knew that the . . . "property damage" had occurred, in whole or in part. If anyone knew, prior to the policy period, that the . . . "property damage" had occurred, then any continuation, change or resumption of such . . . "property damage" during or after the policy period will be deemed to have been known prior to the policy period. . . .
>
> d. . . . "[P]roperty damage" will be deemed to have been known to have occurred at the earliest time when anyone: . . . (3) Becomes aware by any other means that . . . "property damage" has occurred or has begun to occur.

Hickman Decl. at Exs. 3 & 4, p. 57. Capitol argues that Hawk and Ready entered into contracts with Zhang to repair damages that pre-existed their policies and that no meaningful distinction

ORDER -13

exists between the damages that pre-existed Hawk's contract and the damages Zhang alleges Hawk and Ready caused.

On this record, genuine issues of material fact prevent the Court from determining the applicability of this provision. These factual issues include, without limitation, (1) whether anyone actually knew that the alleged property damages pre-existed Zhang's contract with Hawk and Ready, and (2) whether such damage, if any, is distinct from the damage caused by Hawk and Ready's allegedly defective siding work.

### 8. Capitol's Obligation to Pay Covered Property Damage

Capitol requests a judgment declaring that it is only obligated to pay that portion of the underlying judgments, if any, that are attributable to covered property damage. In Washington, if a settlement is reasonable and made in good faith, it establishes not only the insured's liability, but also its presumptive damages in a coverage suit. *Mut. of Enumclaw Ins. Co. v. T & G Constr., Inc.*, 165 Wn.2d 255, 267 (2008); *Besel v. Viking Ins. Co. of Wis.*, 146 Wn.2d 730, 738 (2002); *see also Chaussee v. Md. Cas. Co.*, 60 Wn. App. 504 (1991). An insurer can, however, contest and litigate whether the presumptive damages are covered by its policies. *See, e.g.*, *T & G Constr.*, 165 Wn.2d at 267-68 (presumptive damages are not necessarily covered damages; "insurer may properly litigate [coverage issues] in a coverage case").

In her response, Zhang argued that such a declaration restating Washington law is unnecessary, but deferred the issue to the Court if the Court believed Capitol's requested

declaration was appropriate. The Court finds that Capitol's requested declaration, which Zhang does not substantively object to, may be helpful in resolving this case, and therefore grants Capitol's motion. Under Washington law, Capitol must pay only that portion of the underlying judgments, if any, that are covered under the applicable policies.

**Conclusion**

For the reasons stated in this Order, the Court previously granted in part, denied in part, and deferred in part, Capitol's motion, docket no. 23.

The Clerk is DIRECTED to send copies of this Order to counsel of record.

IT IS SO ORDERED.

DATED this 13th day of April, 2012.

*Thomas S. Zilly*

THOMAS S. ZILLY
United States District Judge

ORDER -15