1
2
3
4
5

UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

6
7

CAPITOL SPECIALTY
INSURANCE CORPORATION,

8

                          Plaintiff,

9                                                    C11-41 TSZ

10          v.                                       ORDER

11   YUAN ZHANG,

12                          Defendant.

13          THIS MATTER comes before the Court on various motions brought by the

14   parties.  In this case, plaintiff Capitol Specialty Insurance Corporation ("Capitol") seeks

15   declaratory relief concerning the scope of coverage owed under insurance policies issued

16   to Hawk Construction, LLC ("Hawk") and Ready Construction, LLC ("Ready"), which

17   performed certain work on a 39-unit apartment building owned by defendant Yuan Zhang

18   ("Zhang").  Zhang sued Hawk in King County Superior Court for breach of contract, and

19   Hawk filed a third-party complaint against Ready, alleging that Ready was liable to

20   Hawk to the extent that Hawk was liable to Zhang.  Zhang eventually settled with both

21   Hawk and Ready, obtaining confessions of judgment from both entities and taking

22   assignments of their respective claims against Capitol in exchange for covenants not to

23

execute.  Pursuant to RCW 4.22.060, the state trial court determined that the amounts of the settlements between Zhang and Hawk ($1,684,087), and between Zhang and Ready ($522,902), were reasonable.

Capitol then initiated this suit against Zhang under the Declaratory Judgment Act ("DJA"), 28 U.S.C. § 2201.  Capitol's DJA claims involve only the duty to indemnify, as opposed to the duty to defend, because Hawk and Ready were represented at Capitol's expense until the settlements with Zhang were reached.  *See* Amended Complaint (docket no. 13).  In response to Capitol's DJA claims, Zhang asserted breach of contract and bad faith counterclaims.  The parties filed cross-motions for summary judgment early in the proceedings, with Capitol seeking rulings that certain insurance policy limitations or exclusions apply and that it owes Zhang no "payment obligation," and Zhang asking the Court to conclude, as a matter of law, that Capitol committed bad faith in handling the claims at issue.  For the most part, the Court denied both parties' motions.  *See* Minute Order (docket no. 70); Order (docket no. 73); Minutes (docket no. 84).

After deciding these motions, the Court permitted the parties to file additional dispositive motions concerning Zhang's amended second counterclaim for bad faith, now limited to Capitol's failure to send an excess warning letter to Ready.  *See* Minutes (docket no. 84).  The parties went far beyond what was allowed, each filing a second summary judgment motion on insurance coverage issues, docket nos. 98 and 105, raising some of the same issues that the Court previously concluded involve factual questions more appropriately reserved for trial.  Moreover, in Capitol's second motion for summary judgment, Capitol indicated that it intended to address yet additional matters in a

subsequent motion for summary judgment.  The Court directed the parties to file

supplemental briefs concerning "any exclusions or other grounds for denying coverage"

that had not already been addressed, and prohibited the parties from filing any further

dispositive motions.  Minute Order (docket no. 137).

After the supplemental briefs had been filed, the Washington Court of Appeals

decided the related case of _Zhang v. Hawk Constr., LLC_, No. 67036-1-I, 2012 WL

6554778 (Wash. Ct. App. Dec. 17, 2012).  In _Zhang_, the Washington Court of Appeals

concluded that the settlements between Zhang, Hawk, and Ready might have been the

product of bad faith, collusion, or fraud, and it reversed the reasonableness determination

that the King County Superior Court had rendered pursuant to RCW 4.22.060.  _Id._ at *4-

*9.  Citing this decision as a reason, Capitol filed a motion, docket no. 146, for relief

from the bar on additional dispositive motions.  Shortly before bringing that motion,

Capitol filed a third motion for summary judgment, docket no. 144, targeted at Zhang's

amended second counterclaim for bad faith handling of Ready's defense.  Zhang

responded with her own third motion for summary judgment as to the counterclaim,

docket no. 147.

Zhang also petitioned the Washington Supreme Court for discretionary review.

The Court directed the parties to show cause why the trial date and remaining deadlines

should not be stricken and the case stayed pending the Washington Supreme Court's

ruling on the petition for review.  Minute Order (docket no. 158).  Based on the parties'

responses, the Court struck the trial date and related deadlines, but deferred ruling on

whether to stay the case.  _See_ Minute Order (docket no. 161).  On July 9, 2013, the

Washington Supreme Court denied Zhang's petition for review, _Zhang v. Hawk Constr., LLC_, No. 88440-4, 177 Wn.2d 1016, 304 P.3d 114 (2013), and the related case is again pending in King County Superior Court.  Capitol has filed a motion asking the King County Superior Court to vacate the confessed judgments entered against Hawk and Ready.  Capitol's motion has not yet been decided.

**Discussion**

A.      **Declaratory Judgment Act**

Pursuant to the DJA, the Court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought."  28 U.S.C. § 2201(a).  To be justiciable under the DJA, a dispute must be "definite and concrete, touching the legal relations of parties having adverse legal interests," and must be "real and substantial," seeking "specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts."  _MedImmune, Inc. v. Genentech, Inc._, 549 U.S. 118, 127 (2007) (quoting _Aetna Life Ins. Co. of Hartford, Conn. v. Haworth_, 300 U.S. 227, 240-41 (1937)).

Even when a suit satisfies the "case or controversy" and other subject matter jurisdictional prerequisites, a district court may exercise its discretion to decline to entertain an action under the DJA, so long as its discretion is appropriately guided by the non-exhaustive factors set forth in _Brillhart v. Excess Ins. Co. of Am._, 316 U.S. 491 (1942), and its progeny.  _See Wilton v. Seven Falls Co._, 515 U.S. 277, 282 (1995); _Gov't Emps. Ins. Co. v. Dizol_, 133 F.3d 1220, 1223-26 (9th Cir. 1998) (en banc).  The factors to

be considered by the Court include:  (i) avoiding needless determination of state law

issues; (ii) discouraging litigants from filing declaratory judgment actions as a means of

forum shopping; and (iii) avoiding duplicative litigation.  _Dizol_, 133 F.3d at 1225; _see_

_also_ _id._ at 1225 n.5 (enumerating other considerations suggested by the Ninth Circuit).

_Brillhart_ contemplates that the ordinarily applied principle of requiring federal courts to

adjudicate claims within their jurisdiction should yield to "considerations of practicality

and wise judicial administration."  _Wilton_, 515 U.S. at 288.  If declining to entertain an

action is appropriate under _Brillhart_, a district court may either stay or dismiss a DJA

claim.  _See_ _Wilton_, 515 U.S. at 290 (affirming a stay of a declaratory judgment action);

_Brillhart_, 316 U.S. at 498 (remanding for the district court to "exercise its discretion in

passing upon the petitioner's motion to dismiss this suit").

        In light of the recent developments in the related state court litigation, the Court

has serious concerns regarding whether Capitol's DJA claims are ripe for review and

whether entertaining Capitol's DJA claims would be consistent with the prudential

considerations articulated in _Brillhart_ and its progeny.  The appellate decision in _Zhang_

has cast doubt on the enforceability of the judgments secured by Zhang against Hawk and

Ready, and whether Zhang will eventually succeed in state court and on what set of facts

remains unclear.  Under Washington law, an insurer's duty to indemnify its insured is not

triggered until "the plaintiff in the underlying action prevails on facts that fall within

coverage."  _See_ _Knipschield v. C-J Recreation, Inc._, 74 Wn. App. 212, 216, 872 P.2d

1102 (1994).  Thus, if Capitol prevails on its motion to vacate the judgments, then its

DJA claims might be moot.

1    The Court is disinclined to enter orders that might prove unnecessary or merely

2  advisory or that are potentially duplicative of or inconsistent with the decisions of the

3  state court.  Having expressed these concerns, the Court makes the following rulings,

4  which the Court believes will not interfere with the matters pending in King County

5  Superior Court or be rendered moot by the state court proceedings.  To the extent,

6  however, that Capitol wishes to assert the appellate decision in *Zhang* as a basis for

7  denying coverage, the Court will not entertain such motion prior to final resolution of the

8  state court proceedings, and thus, Capitol's motion for relief from the prohibition on

9  additional dispositive motions, docket no. 146, is DENIED.

10 **B.    Summary Judgment Standard**

11   The Court shall grant summary judgment if no genuine issue of material fact exists

12 and the moving party is entitled to judgment as a matter of law.  Fed. R. Civ. P. 56(a).

13 Rule 56 "mandates the entry of summary judgment, after adequate time for discovery and

14 upon motion, against a party who fails to make a showing sufficient to establish the

15 existence of an element essential to that party's case, and on which that party will bear

16 the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).  To

17 survive a motion for summary judgment, the adverse party must present "affirmative

18 evidence," which "is to be believed" and from which all "justifiable inferences" are to be

19 favorably drawn.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 257 (1986).

20 / / /

21 / / /

22 / / /

23

1  **C.**   **Second Motions for Summary Judgment (Insurance Coverage Issues)**

2          The parties raise a panoply of issues concerning various limitations or exclusions

3  in the commercial general liability ("CGL") policies issued by Capitol to Hawk and

4  Ready.  The Court now addresses these coverage issues.

5          **1.**   **Fungi or Bacteria and EIFS Exclusions**

6          Both Zhang and Capitol have moved for summary judgment concerning the

7  applicability of the "fungi or bacteria" exclusion.  Capitol has also renewed its request for

8  summary judgment regarding the exterior insulation and finish system ("EIFS") work

9  exclusion.  The Court has already ruled on both of these subjects.  Order (docket no. 73).

10  To the extent the parties seek reconsideration, their motions are untimely and lack merit,

11  and they are therefore DENIED.

12          **2.**   **Classification Limitation**

13          Both CGL policies contain the following limitation:  "This insurance applies to . . .

14  'property damage' . . . arising out of only those operations, which are classified and

15  shown, on the Commercial General Liability Coverage Declarations, its endorsements,

16  and supplements."  Exs. 3 & 4 to Hickman Decl. (docket nos. 26 & 27 at 63) [hereinafter,

17  collectively, "Policies"].  Both CGL policies enumerate as a classification "Carpentry–

18  Residential Property."  *Id.* (docket nos. 26 & 27 at 16).  Capitol's contention that "siding

19  work," which was the basis of Zhang's claim against Hawk and Hawk's third-party claim

20  against Ready, does not fall within the commonly understood definition of carpentry is

21  not supported by citation to any authority, is contrary to the definition of "carpenters"

22  used by the Bureau of Labor Statistics of the United States Department of Labor, and is

23

inconsistent with the language in at least two cases. *See* http://www.bls.gov/oes/current/ oes472031.htm ("Construct, erect, install, or repair structures and fixtures made of wood, such as concrete forms; building frameworks, including partitions, joists, studding, and rafters; and wood stairways, window and door frames, and hardwood floors.  May also install cabinets, *siding*, drywall and batt or roll insulation." (emphasis added)); *see also Seaboard Sur. Co. v. United States ex rel. C.D.G., Inc.*, 355 F.2d 139, 141 n.3 (9th Cir. 1966) ("The total contract price consisted of rough carpentry with siding $130,000; . . . and finish carpentry $18,750."); *Great N. Ry. Co. v. Wojtala*, 112 F.2d 609, 610 (9th Cir. 1940) ("Witness Espelien, a carpenter, testified for appellee, that he customarily used a scaffold in installing siding on buildings."); *compare* Flores Dep. at 164:7-12, Ex. 2 to Skoglund Decl. (docket no. 113-2) ("If I see somebody that's putting siding on, one would probably refer to that person as a sider.  But it could be a carpenter.  By the same token, I have seen carpenters installing windows.  We don't refer to those guys as the window installer.  They're still carpenters.").  Capitol's second motion for summary judgment premised on the classification limitation is DENIED.

### 3.   **Property Damage**

Both CGL policies define property damage as "[p]hysical injury to tangible property, including all resulting loss of use of that property."  Policies at § V.17.a.  To the extent Capitol's second motion for summary judgment is based on the argument that Zhang does not herself own the apartment building at issue, but rather is the sole member of a limited liability company that owns the building, and suffered only financial loss rather than physical injury to property, the motion is DENIED.  If necessary, either party

1  may move to join or substitute the limited liability company as a real party in interest.

2  _See_ Fed. R. Civ. P. 17, 19, & 20.

3      **4.**    **Pre-Policy Damage and Knowledge**

4      Both CGL policies indicate that they apply to "'property damage' only if . . . the

5  . . . 'property damage' occurs during the policy period; and . . . [p]rior to the policy

6  period, no one knew that the . . . 'property damage' had occurred, in whole or in part."

7  Contractors Combination Endorsement at 6, ¶¶ 1.b(2)&(3) (docket nos. 26 & 27 at 57).

8  Hawk's policy was in effect from December 5, 2007, through November 25, 2008.  Ex. 3

9  to Hickman Decl. (docket no. 26 at 2).  Ready's policy was in effect from December 11,

10  2007, through October 6, 2008.  Ex. 4 to Hickman Decl. (docket no. 27 at 2).

11      In its second motion for summary judgment, Capitol argues that the damage at

12  issue is not covered because it occurred before the policies were issued and because

13  Zhang knew about the damage prior to the policy period.  With regard to the latter

14  contention, the Court has already concluded that genuine issues of material fact preclude

15  summary judgment.  _See_ Order at 13-14 (docket no. 73).  In contrast, Zhang contends

16  that, pursuant to a contract specifying the scope of work, Hawk and Ready repaired all

17  known water damage and replaced the siding on the apartment building during the period

18  between October 2007 and December 2007.  Zhang has labeled this timeframe as

19  "Phase I."  According to Zhang, at the conclusion of Phase I, the contracting parties

20  believed the work had been performed correctly.  _See_ Zhang Decl. at ¶¶ 1 & 2 (docket

21  no. 114); Park Decl. at ¶ 2 (docket no. 116); Cho Decl. at ¶ 2 (docket no. 117).

22

23

ORDER - 9

1        Zhang asserts that the contracting parties did not learn of water intrusion problems

2   until the spring of 2008, Zhang Decl. at ¶ 3 (docket no. 114); Park Decl. at ¶¶ 3 & 5

3   (docket no. 116); Cho Decl. at ¶¶ 3 & 5 (docket no. 117), and that Hawk and Ready

4   commenced repairs in June 2008.  The work was completed by August or September

5   2008.  Zhang calls this period "Phase II."  Zhang's view is that the damage for which she

6   obtained judgment against Hawk and Ready, and for which she, as Hawk's and Ready's

7   assignee, seeks indemnification from Capitol, occurred during Phase II.  Zhang argues

8   that the property damage therefore occurred during the policy period and without her or

9   Hawk's pre-policy knowledge.[1]  Zhang has presented sufficient facts to survive summary

10  judgment, and Capitol's second motion premised on pre-policy damage or knowledge (or

11  the "known loss doctrine") is DENIED.

12       With regard to Zhang's opposite request for a ruling that the damage at issue was

13  not pre-existing, the Court likewise concludes that factual questions render summary

14  judgment inappropriate.  Capitol contends that Zhang cannot segregate the damage that

15  happened before the policy period from the damage transpiring while the CGL policies

16  were in effect.  For support, Capitol cites to Zhang's own expert as indicating that "it is

17  very hard if not impossible to determine when damage occurred."  Flores Decl. at ¶ 8,

18

---

19  [1] _Trinity Universal Ins. Co. of Kan. v. Northland Ins. Co._, 2008 WL 4386760 (W.D. Wash. Sep. 23,
20  2008), on which Capitol relies, is distinguishable.  In _Trinity_, before the inception of the insurance policy
    at issue, the insured knew of the water damage allegedly caused in part by its stucco work.  The Court in
21  _Trinity_ rejected the insured's contention that, because it did not believe its work contributed in any way to
    the damage associated with water intrusion, it did not have the requisite pre-policy "notice" that it would
22  be liable for the damage.  Unlike in _Trinity_, the insureds in this case, Hawk and Ready, assert that they
    were not aware of any water intrusion prior to the policy period because they believed their pre-policy
    work had restored the relevant portions of the building to an undamaged condition.

23

ORDER - 10

1    Ex. 2 to Hickman Decl. (docket no. 106-2).  Because Capitol has raised genuine issues of

2    material fact concerning when the "property damage" for which Zhang, as assignee of

3    Hawk and Ready, seeks indemnification from Capitol arose, the remaining portions of

4    Zhang's second motion for summary judgment are DENIED.[2]

5        **5.    "Your Work" Exclusion**

6            Both CGL policies contain an exclusion for "Your Work," which provides that

7    property damage "to 'your work' arising out of it or any part of it and included in the

8    'products-completed operations hazard'" is not covered.  Policies at § I.2.l (docket

9    nos. 26 & 27 at 26).  The products-completed operations hazard includes property

10   damage "occurring away from premises you own or rent and arising out of 'your product'

11   or 'your work.'"  _Id._ at § V.16.a (docket nos. 26 & 27 at 35).  "Your Work" does not

12   encompass work "performed on your behalf by a subcontractor," _id._ at § I.2.l, but a

13   separate "Independent Contractor" exclusion indicates that the insurance does not apply

14   to property damage "arising out of . . . [t]he operations of any independent contractor for

15   or on behalf of any insured," _id._ (docket nos. 26 & 27 at 51).

16           Provisions like those quoted above differentiate commercial general liability

17   policies from performance bonds or malpractice insurance.  _See Big Constr., Inc. v._

18   _Gemini Ins. Co._, 2012 WL 1858723 at *7 (W.D. Wash. May 22, 2012).  "Commercial

19   general liability policies are designed generally to provide coverage for a number of risks,

20   —————————————————

21   [2] Thus, the Court need not address the coverage defenses outlined in Section K of Capitol's supplemental
     brief, docket no. 139, concerning which Capitol has not affirmatively sought summary judgment, but

22   rather which Capitol has interposed merely as grounds for denying Zhang's second motion for summary
     judgment.

23

1  including employee injuries while on the work site and physical damage to property other

2  than the work of the insured." _Id._  They do not cover "an insured's business risk of

3  performing faulty work."  _Id._; _see also_ _Dewitt Constr. Inc. v. Charter Oak Fire Ins. Co._,

4  307 F.3d 1127, 1133-34 (9th Cir. 2002).

5       When the insured's defective work, however, causes damage to the work of

6  others, the resulting damage is within the scope of a CGL policy.  _See_ _Dewitt_, 307 F.3d at

7  1134.  Whether Zhang can prove that Ready's allegedly deficient work caused damage to

8  Hawk's work, or vice versa, or that Hawk and/or Ready caused damage to building

9  components other than those they and/or it installed are matters for the trier-of-fact to

10  decide.  Capitol's second motion for summary judgment relying on the "Your Work"

11  and/or "Independent Contractor" exclusions and/or the interpretations of CGL policies

12  articulated in _Dewitt_, _Big Constr._, and similar cases is DENIED.

13       **6.**   **Rescission**

14       Capitol contends that the CGL policies should be rescinded because Hawk and

15  Ready made intentional, material misrepresentations on their application forms.  In

16  particular, Capitol argues that Hawk and Ready failed to disclose that they performed

17  siding work and that they worked on apartments.  Having reviewed the application forms,

18  Exs. 1 & 2 to Schirmer Decl. (docket nos. 17-1 & 17-2), the Court is unpersuaded that

19  Capitol is entitled to judgment on this issue as a matter of law.  An insurer may not

20  rescind a policy absent proof that the oral or written misrepresentation or warranty on

21  which it relies was "made with the intent to deceive."  RCW 48.18.090(1).  Capitol has

22  not made the requisite showing to warrant summary judgment.

23

ORDER - 12

1    In the applications at issue, both Hawk and Ready indicated that they performed

2  carpentry on residential structures.  Exs. 1 & 2 to Schirmer Decl.  They also represented

3  that 50% of their work was on building exteriors, and they checked the box next to

4  "Carpentry – Residential < 3 Stories" in the section on classifications of operations.  *Id.*

5  Although they did not make a notation for the classification "Siding Installation," a

6  reasonable inference (to which Zhang is entitled as the non-moving party) is that Hawk

7  and Ready had a good faith belief that "Carpentry – Residential < 3 Stories"

8  encompassed replacement or repair of existing siding, and that the additional "Siding

9  Installation" classification was unnecessary or inapplicable.

10    Moreover, although Hawk and Ready did not check "Apartments" in response to

11  the question "Does your operations involve any part of the construction of the following

12  types of buildings," *id.*, their answers, standing alone, cannot be deemed, as a matter of

13  law, to be false or made with the intent to deceive when the inquiry could be understood

14  to seek an affirmative response only if the entity seeking CGL insurance was engaged in

15  building entire, new structures, as opposed to repairing portions of existing ones.  *See*

16  Webster's Third New Int'l Dictionary 489 (1981) (construction means "the act of putting

17  parts together to form a complete integrated object").  Given that the principals of Hawk

18  and Ready are less than fluent in English, Capitol cannot rely merely on such ambiguous

19  application language to "defeat or avoid" the insurance contracts at issue.  *See*

20  RCW 48.18.090(1); *see also* *Sentry Select Ins. Co. v. Royal Ins. Co. of Am.*, 481 F.3d

21  1208, 1220-21 (9th Cir. 2007) (only if an insurer proves that the insured "knowingly

22  made false material statements" does the presumption arise of an "intent to deceive").

23

ORDER - 13

1    Thus, Capitol's second motion for summary judgment seeking rescission of the CGL

2    policies is DENIED.

3            **7.       Breach of "Notice" Clause**

4            The CGL policies require that Capitol be "notified as soon as practicable of an

5    'occurrence' or an offense which may result in a claim."  Policies at § IV.2.a (docket

6    nos. 26 & 27 at 31).  Capitol's contention that Hawk and Ready breached this provision

7    by not advising Capitol of the damage resulting from Phase I of their work lacks merit.

8    The parties agree that Phase I was completed before the policy period, and thus, nothing

9    Hawk or Ready did during Phase I could be considered an "occurrence," within the

10   meaning of the CGL policies, for which they were required to provide Capitol notice.

11   Contrary to Capitol's apparent position, the CGL policies cannot reasonably be

12   interpreted as obligating either Hawk or Ready to provide advance notice that their future

13   (Phase II) work might result in liability.[3]  Capitol's second motion for summary judgment

14   based on a failure to notify before commencing Phase II is DENIED.

15   **D.      Third Motions for Summary Judgment (Bad Faith Counterclaim)**

16           Under Washington law, an insurer has a duty to diligently investigate and evaluate

17   a claim tendered under the policy it issued.  _Truck Ins. Exch. of the Farmers Ins. Group v._

18   _Century Indem. Co._, 76 Wn. App. 527, 534, 887 P.2d 455 (1995).  This duty requires an

19   insurer to consider settlement offers as though it bore the entire risk, including any

20   judgment in excess of the policy limits.  _Id._  When a settlement offer exceeds the policy

21

22   [3] Whether the damage for which Zhang seeks indemnification as assignee of Hawk and Ready resulted
     from Phase I or Phase II, or has some other cause, constitutes a separate question of fact.

23

ORDER - 14

1    limits, an insurer must "communicate the offer to its insured, ascertain whether the

2    insured is willing to make the necessary contribution to the settlement amount, and must

3    exercise good faith in deciding whether to pay its own limits." _Id._; _see also_ Wash.

4    Pattern Instr. 320.05(5).

5           An insured may independently negotiate a settlement with the suing party and

6    assign its rights against the insurer to the suing party.  In such event, to prevail on a bad

7    faith claim against the insurer, the assignee must prove the insured suffered harm from

8    the alleged bad faith.  _See_ _Safeco Ins. Co. of Am. v. Butler_, 118 Wn.2d 383, 394, 823 P.2d

9    499 (1992).  If bad faith is proven, harm is presumed, but it may be rebutted by the

10   insurer.  _Id._  If an insured, in settling with the suing party, executes a stipulated or

11   confessed judgment and assigns its rights against the insurer to the suing party in

12   exchange for a covenant not to execute, the insured (or suing party as assignee) can still

13   demonstrate the requisite harm for a bad faith claim.  _Besel v. Viking Ins. Co. of Wis._, 146

14   Wn.2d 730, 737, 49 P.3d 887 (2002).  A covenant not to execute does not release the

15   insured from liability, but rather constitutes "an agreement to seek recovery only from a

16   specific asset - the proceeds of the insurance policy and the rights owed by the insurer to

17   the insured." _Id._ (quoting _Butler_, 118 Wn.2d at 399).  In such situation, the presumptive

18   measure of harm is the amount of the covenant judgment, provided that the covenant

19   judgment is reasonable.  _Id._ at 738.

20          In her amended second counterclaim, Zhang (as Ready's assignee) contends that

21   Capitol acted in bad faith by failing to provide Ready with an excess warning letter; she

22   does not allege that Capitol refused in bad faith to settle Zhang's claim (as Hawk's

23

1   assignee) against Ready.  Zhang asserts that the harm Ready suffered was the amount of

2   the confessed judgment she secured by way of settlement, namely $522,902, which is

3   within Capitol's policy limits.  Although Washington jurisprudence supports Zhang's

4   contention that $522,902 is the presumptive measure of harm, no authority draws the

5   requisite causal link between the acknowledged absence of an excess warning letter and

6   the settlement within policy limits.  Zhang cannot, as a matter of law, show that Ready

7   was harmed by the alleged bad faith.

8          Moreover, even if Zhang could establish that Ready suffered harm because it did

9   not receive an excess warning letter from Capitol, Zhang cannot, as a matter of law,

10  demonstrate that Capitol acted in bad faith by failing to engage in such communication

11  with Ready.  No dispute exists that, in June 2010, Zhang made a formal demand to Hawk

12  in the amount of $1,900,000, which exceeded both Hawk's and Ready's "per occurrence"

13  policy limit.  The parties agree that Capitol promptly sent an excess warning letter to

14  Hawk.  Hawk and Ready, as adverse insureds of the same insurer, were represented by

15  different attorneys.  Prior to settling with Zhang, Hawk did not send a demand to Ready.

16  Taylor Decl. at ¶ 6 (docket no. 57); Daly Decl. at ¶ 5 (docket no. 58).  According to both

17  parties, after settling with Zhang, Hawk (acting through its assignee Zhang) offered to

18  settle with Ready for $850,000.  *See* Zhang's First Motion at 6 (docket no. 50); Capitol's

19  Third Motion at 5 (docket no. 144).  This amount was within Ready's policy limit, and no

20  excess warning letter was issued by Capitol, nor was one required at that time.  *See*

21  *Truck*, 76 Wn. App. at 534.

22

23

ORDER - 16

1    In asserting that Capitol owed Ready an excess warning letter, Zhang improperly

2    blurs the lines between the parties.  Zhang contends that, because she presented to Hawk

3    a settlement offer exceeding policy limits, Capitol was required to advise Ready of the

4    offer.  No authority, however, required Hawk to make the same settlement demand to

5    Ready that Zhang tendered to Hawk, and no Washington case has imposed a duty on an

6    insurer to send an excess warning letter to an insured upon which no formal demand has

7    been made or to which a settlement offer within policy limits has been extended.  The

8    fact that Hawk and Ready were both insured by Capitol is of no relevance; Hawk and

9    Ready were adverse parties, represented by separate counsel, and treated for these

10   purposes as having different insurers.  Because Capitol had no duty to issue an excess

11   warning letter to Ready, Capitol's third motion for summary judgment, docket no. 144, is

12   GRANTED, Zhang's third motion for summary judgment, docket no. 147, is DENIED,

13   and Zhang's amended second counterclaim for bad faith handling of Ready's defense is

14   DISMISSED with prejudice.

15   **<u>Conclusion</u>**

16          For the foregoing reasons, the Court ORDERS:

17          (1)     Zhang's previously deferred motion for in camera review, docket no. 130,

18   is treated as a motion to compel discovery and is DENIED:

19                  (a)     Having reviewed the "Withheld and Redaction Log" and the

20          materials that Capitol provided for in camera review, except for the documents

21          Bates stamped CAP 000510 – CAP 000538 and CAP 001392 – CAP 001420,

22          which appear to be case evaluations prepared by Capitol's attorneys and which the

23

Court has not further examined, the Court is satisfied that Capitol need not disclose to Zhang any of the various writings enumerated in the log; and

      (b)     The Court declines to award attorney's fees to either party;

(2)     Capitol's motion for relief from the prohibition on additional dispositive motions, docket no. 146, is DENIED;

(3)     Zhang's second motion for summary judgment, docket no. 98, is DENIED;

(4)     Capitol's second motion for summary judgment, docket nos. 105 and 139, is DENIED;

(5)     Capitol's third motion for summary judgment, docket no. 144, is GRANTED, Zhang's third motion for summary judgment, docket no. 147, is DENIED, and Zhang's amended second counterclaim for bad faith handling of Ready's defense is DISMISSED with prejudice;

(6)     The parties are hereby ADVISED that the Court might exercise its discretion to decline to entertain any claim or counterclaim, motion, argument at trial, or other request for relief concerning the reasonableness of any confessed judgment or the appropriate amount of damages associated with Zhang's claim against Hawk or Hawk's third-party claim against Ready (as assigned or otherwise);

(7)     The parties are DIRECTED to file, within fourteen (14) days of the date of this Order, supplemental briefs, not to exceed five (5) pages in length, concerning whether this case should be stayed pending final resolution of the related state court action captioned *Zhang v. Hawk Constr., LLC*, King County Superior Court Case No. 09-2-14751-5; and

1          (8)     The Clerk is DIRECTED to send a copy of this Order to all counsel of

2   record.

3          IT IS SO ORDERED.

4          Dated this 30th day of September, 2013.

6          _____
           Thomas S. Zilly
7          United States District Judge

ORDER - 19